[613 NYS2d 152]

GEORGE A. FULLER COMPANY, Respondent, v UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.

First Department, June 9, 1994

### APPEARANCES OF COUNSEL

*Anthony J. Piazza* of counsel, New York City *(Philip Schlau, Michael F. Harris* and *Abraham S. Altheim* with him on the brief; *Newman Schlau Fitch & Lane, P. C.,* and *Saperston & Day, P. C.,* attorneys), for appellant.

*Michael T. Rogers* of counsel *(James E. Frankel* and *Paul H. Slaney* with him on the brief; *Shea & Gould,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

In this action for a declaration of rights under a commercial general liability insurance policy, the insurer, defendant United States Fidelity and Guaranty Company (USF&G), appeals from the grant of summary judgment requiring it to provide a defense in the underlying action to its insured, plaintiff George A. Fuller Company.

USF&G's policy insures Fuller for legal liability for "bodily injury" and "property damage" occurring during the policy period from December 1, 1988 to December 1, 1989 caused by an "occurrence", which is defined as "an accident, including continuous or repeated exposure to substantially the same

general harmful conditions." Exclusion 2 (j) provides that "[t]his insurance does not apply to * * * '[p]roperty damage' to * * * (5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the 'property damage' arises out of those operations or (6) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The policy defines "your work" as "a. [w]ork or operations performed by you or on your behalf; and b. [m]aterials, parts or equipment furnished in connection with such work or operations" as well as "warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b."

On or about August 1985, Epurio, N.V. retained Fuller as the construction manager in the construction of a residential/commercial building at 150 East 85th Street in Manhattan. Subsequently, on or about December 15, 1987, Fuller entered into a separate agreement with Epurio to act as general contractor to complete the construction. Fifteen months later, in March 1989, Epurio commenced an action against Fuller and others, asserting six causes of action against Fuller, all relating to Epurio's dissatisfaction with Fuller's performance under the contracts.

In its first cause of action, Epurio alleged that, in breach of its construction management agreement, Fuller failed adequately and properly to supervise the installation of the building's wood flooring and an aluminum curtain wall with windows and storefront glazing and to provide for the installation of a code-compliant water metering system. As a result, Epurio alleged, the flooring buckled and cracked, rendering it unusable, the defective curtain wall and window installation caused widespread water infiltration into the building and the building's water metering plans had to be revised. The second cause of action alleged a violation of fiduciary duty in that Fuller failed to utilize its best efforts to obtain the lowest obtainable prices from trade contractors, thereby causing Epurio to pay a much higher price for the completed building than would otherwise have been necessary. The third cause of action asserted a breach of Fuller's duty of care as a construction manager in that it negligently and carelessly performed its duties. The fourth cause of action, labeled breach of contract, alleged a failure timely to complete the project and to complete the punchlist and lobby work. The fifth cause of

action alleged Fuller's breach of duty as a general contractor in that it failed to use reasonable care in the performance of its work. The sixth cause of action alleged a breach of Fuller's implied warranty of performance in that it used inferior, defective and inadequate materials and employed improper construction methods, thereby failing to deliver a building constructed free of defects in accordance with the plans and specifications.

Fuller retained its own counsel, Shea & Gould, to defend it and, on June 14, 1989, wrote to USF&G, tendering it the defense of the action and requesting that Shea & Gould, "familiar with the proceedings and the complexity of issues involved", continue as counsel in the action. USF&G responded by letter of September 6, 1989, advising that only the first cause of action asserted a covered claim and disclaiming coverage as to the second through sixth causes of action because the claims asserted "do not meet the definition of property damage". It agreed to defend Fuller but expressly reserved its rights to disclaim for any other valid reason which might arise. Noting the demand for punitive/exemplary damages, USF&G also disclaimed coverage for such damages. USF&G thereafter, by letter dated April 12, 1990, disclaimed coverage as to the entire claim on the ground that there had been no "occurrence" as defined in the policy, such as would trigger coverage. USF&G also cited exclusions 2 (j) and *(l)*.

This action, asserting two causes of action, one based on breach of contract, the other on estoppel to disclaim because of untimeliness, was commenced on September 14, 1990. After joinder of issue, USF&G moved for summary judgment, arguing that the allegations of the underlying complaint against Fuller were outside the terms of its insuring agreement. Fuller cross-moved for summary judgment, seeking a declaration that the complaint's allegations were covered by the policy's terms and conditions. The IAS Court denied the motion and granted the cross motion, finding that the underlying complaint could be read to allege that, as a result of Fuller's negligent supervision, the building was continuously exposed to a generally harmful condition, i.e., water infiltration, and that continuous exposure to a negligently caused condition constitutes an accident under the policy. The court also found the asserted exclusions inapplicable since the underlying complaint did not seek to recover the cost of replacing incorrectly performed work but rather compensation for water damage caused by defective work. Finally, the court

found that USF&G was estopped to deny coverage because of its untimely disclaimer. In our view, none of the IAS Court's premises can withstand analysis. Accordingly, we reverse and declare in USF&G's favor.

■ Whether examined in its totality or by a review of each cause of action, the Epurio complaint does not allege an "occurrence" resulting in "property damage" as contemplated by the comprehensive general liability policy at issue. As is manifestly clear from a reading of the complaint, the asserted claims arise out of a contract dispute between the insured, a general contractor, and Epurio, the property owner, in which it is alleged that Fuller, either as construction manager or general contractor, improperly supervised the installation of the flooring, curtain wall and windows and metering system. USF&G's policy, however, does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product. The policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced. (See, Village of Newark v Pepco Contrs., 99 AD2d 661, affd 62 NY2d 772; Parkset Plumbing & Heating Corp. v Reliance Ins. Co., 87 AD2d 646.)

As construction manager, Fuller subcontracted the floor and curtain wall installation and agreed to provide for the installation of a water metering system. Epurio alleges that the work was done improperly, thus necessitating extra and unnecessary construction costs. Epurio also claims that as a result of defective construction the building's value has been diminished. These allegations do not involve damage caused by a "continuous or repeated exposure to substantially the same general harmful conditions", which, in accordance with the policy's terms, would constitute an "occurrence" but, rather, intentional cost-saving or negligent acts only affecting Epurio's economic interest in the building.

In any event, the allegations all relate to Fuller's failure to meet its contractual obligations. The third and fifth causes of action, although labeled "[n]egligent [p]erformance" and "[n]egligent [c]onstruction", respectively, represent nothing more than a damage claim for the same breach of contract asserted in the other causes of action. A contract default under a construction contract is not transformed into an "accident, including continuous or repeated exposure to sub-

stantially the same general harmful conditions" by the simple expedient of alleging negligent performance or negligent construction.

To interpret the policy as did the IAS Court would transform USF&G into a surety for the performance of Fuller's work. USF&G's liability policy was never intended to insure Fuller's work product or Fuller's compliance, as a general contractor or construction manager, with its contractual obligations. Nor may the Epurio complaint be read to assert a claim other than one by a contracting party for the economic loss it sustained due to the allegedly defective work by the other contracting party. *Parkset Plumbing & Heating Corp. v Reliance Ins. Co.* (87 AD2d 646, *supra)* dealt with a similar pattern. A building owner sued its plumbing contractor, alleging breach of contract and negligent and careless performance of the work. The only damages claimed were those inherent in the defective work. In holding that the general liability insurer's policy did not provide coverage, the Court found that "[t]he complaint * * * is clearly one sounding in contract and not in negligence [citation omitted] and the mere use of the word 'negligent' alone cannot turn the complaint into a cause of action for negligence [citation omitted]. It cannot be contended that the parties 'intended these liability policies to operate as performance bonds for the work performed by plaintiff or his subcontractor' [citation omitted]." *(Supra,* at 647.)

In any event, even if the claims asserted in the Epurio complaint were otherwise covered, they would fall within the policy's exclusions 2 (j) (5) and (6), which except from coverage damage to the insured's work product. Fuller's contract with Epurio required it, as a general contractor and construction manager on the project, to provide a completed building. All of Epurio's claims relate to alleged defects in the construction of the building and therefore fall within the exclusions.

In *Zandri Constr. Co. v Firemen's Ins. Co.* (81 AD2d 106, *affd sub nom. Zandri Constr. Co. v Stanley H. Calkins, Inc.,* 54 NY2d 999), which involved facts virtually identical to those here, the insured, a general contractor, was sued for failure to complete the construction of a church in accordance with plans, causing it to become unsafe and unfit for occupancy. The insured carried both comprehensive general liability insurance and contractual liability insurance, as to which both insurers disclaimed, prompting the insured to seek declaratory relief. Each policy contained an identically worded exclusion

with respect to property damage to the insured's work product. In ruling against the insured, the Court held that the exclusions "unambiguously exclude coverage for property damage to the insured's work product caused by its failure to perform in a workmanlike manner or by its breach of a warranty of fitness or quality of that work product, i.e., the completed church. In other words, the insurers clearly did not intend to provide coverage for claims against their insured for breach of express or implied warranties of workmanship when the damages claimed were the cost of correcting the work itself. The risk that the insurers clearly intended to cover was the possibility that the work product of the insured, once completed, would cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured might be found liable" (supra, at 109). Addressing the same exclusion under a contractual property damage liability policy in Adler & Neilson Co. v Insurance Co. (56 NY2d 540, 542), the Court of Appeals held: "It operates to deny the insured coverage for damage to its own work product but not for damage caused by the insured to the work product of others."

Since it is clear that all of Epurio's claims arise out of defects in the building constructed by Fuller or the construction of which it managed pursuant to its contracts, the work product exclusion applies to exempt these claims from coverage. Moreover, USF&G's disclaimer was prompt and its acceptance of Fuller's tender of a defense undertaken pursuant to a complete reservation of rights to disclaim coverage "for any other valid reason which may arise."

■ Nor, contrary to the IAS Court's finding, has Fuller shown prejudice by USF&G's acceptance of the defense of the underlying action and its initial advice that the claims asserted in Epurio's first cause of action were covered. Having previously retained its own counsel, Fuller has always been in complete control of the defense of the underlying action. USF&G has in no way hampered that defense. Nor, as claimed, did it ever prevent or discourage any settlement negotiations, which were always in the hands of its competent counsel. Furthermore, Fuller has never indicated that it ever changed its position in the underlying suit or relied to its detriment on USF&G's initial advice. Since Fuller has in no way been prejudiced, estoppel does not lie. (See, e.g., Hartford Acc. & Indem. Co. v Peck Mem. Hosp., 162 AD2d 659, 661.)

Accordingly, the order of the Supreme Court, New York

County (Shirley Fingerhood, J.), entered on or about August 17, 1993, denying defendant's motion for summary judgment and granting plaintiff's cross motion for summary judgment declaring that defendant is required to provide a defense in the underlying action, should be reversed, on the law, with costs and disbursements, the motion granted, the cross motion denied and a declaration made in defendant's favor.

WALLACH, RUBIN and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 17, 1993, denying defendant's motion for summary judgment declaring that defendant is required to provide a defense in the underlying action, reversed, on the law, with costs and disbursements, the motion granted, the cross motion denied and a declaration made in defendant's favor.