FILED: April 16, 2001

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CENTURY INDEMNITY COMPANY, as
successor to CCI Insurance
Company, as successor to Insurance
Company of North America,
                    *Plaintiff-Appellee,*

            v.

PETER O. STOLTZ; BROOKE M.
STOLTZ,
                    *Defendants-Appellants,*

            and

GOLDEN HILLS BUILDERS,
INCORPORATED,
                    *Defendant.*

No. 00-1766

---

ORDER OF CERTIFICATION

---

TO: THE HONORABLE CHIEF JUSTICE AND JUSTICES OF
    THE SOUTH CAROLINA SUPREME COURT

   Pursuant to Rule 228 of the South Carolina Appellate Court Rules,
we certify two questions that are set forth herein to the South Carolina
Supreme Court.

I.

*Nature of the Controversy*

   This is an action by an insurance company for declaratory relief in
an insurance coverage dispute. Century Indemnity Company (Cen-

tury) brought this declaratory judgment action against its insured, Golden Hills Builders, Inc. (Golden Hills Builders), a general contractor, and Peter and Brooke Stoltz (the Stoltzes), the owners of a home constructed by Golden Hills Builders as general contractor. The action seeks a declaration that no coverage under a standard commercial general liability policy issued by Century's predecessor to Golden Hills Builders exists for: (1) the cost and expenses of repairs and replacement of the synthetic stucco exterior of the Stoltzes' home, which exterior a subcontractor of Golden Hills Builders allegedly constructed in a defective manner; and (2) the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior.

## II.

### *Relevant Facts and Procedural History*

The facts relevant to the certified questions presented are not in dispute. Golden Hills Builders is a general contractor in the business of building residential homes. On July 29, 1988, Golden Hills Builders acquired title to Lot 8, Phase I-A of Golden Hills Subdivision, with a street address of 116 Scotland Drive, Lexington, South Carolina. Golden Hills Builders began construction of a "spec home" on Lot 8 in 1989. Golden Hills Builders hired a sub-contractor to construct the synthetic stucco exterior of the home. Prior to December 7, 1990, moisture damage occurred to the substrate and framing members of the home resulting from the alleged defective construction of the home's synthetic stucco exterior. The damage has been continuous ever since.

On June 28, 1990, Golden Hills Builders entered into a contract (the Purchase Contract) with the Stoltzes whereby the Stoltzes agreed to purchase, and Golden Hills Builders agreed to sell to the Stoltzes, Lot 8 and the yet to be completed home on that lot. Golden Hills Builders and the Stoltzes closed on the Purchase Contract on February 22, 1991, thus causing legal title to the property to be transferred to the Stoltzes.

Between December 7, 1989 and December 7, 1990, Golden Hills Builders was insured pursuant to a standard commercial general liability policy (the Policy) issued by the Insurance Company of North America. Century is the successor of CCI Insurance Company, which was the successor of the Insurance Company of North America.

On July 27, 1999, the Stoltzes filed a civil action in South Carolina state court against Golden Hills Builders and others. The primary cause of action is for defective construction of the subject home. As damages, the Stoltzes sought the awarding of costs and expenses in connection with repairing and replacing the synthetic stucco exterior of their home and all damaged parts of the home resulting from the alleged defective construction of the home's synthetic stucco exterior, including the costs and expenses of repairing the home's substrate and framing members. The Stoltzes also sought recovery for the loss of their home's fair market value. Additionally, the Stoltzes have sought punitive damages and attorneys' fees under a cause of action for unfair trade practices under the South Carolina Unfair Trade Practices Act. S.C. Code Ann. §§ 39-5-10 to -160 (Law. Co-op 1985 & Supp. 2000).

As previously stated, Century brought this declaratory judgment action against Golden Hills Builders and the Stoltzes in the United States District Court for the District of South Carolina, Columbia Division, seeking a declaration that no coverage exists under the Policy for: (1) the cost and expenses of repairs and replacement of the synthetic stucco exterior of the Stoltzes' home, which exterior a subcontractor of Golden Hills Builders allegedly constructed in a defective manner; and (2) the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior. Century premised subject matter jurisdiction upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. Century subsequently made a motion for summary judgment, which the district court granted *in toto*. The Stoltzes then noted a timely appeal, which Golden Hills Builders did not join. On appeal, the Stoltzes only seek reversal of that portion of the district court's order granting summary judgment in favor of Century with respect to Century's request for a declaration that the Policy provides no coverage

for the costs and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior.

We now set forth the provisions of the Policy relevant to the certified questions presented.

*LANGUAGE INITIALLY PROVIDING COVERAGE.*

Section I.A.1.a. of the Policy provides that Century "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Joint Appendix (J.A.) 32). Section I.A.1.b. of the Policy provides that the Policy will apply to property damage only if:

> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

> (2) The . . . "property damage" occurs during the policy period.

*Id.* The definition section of the Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. 42).

*THE j.(1) EXCLUSION.*

Section I.A.2.j.(1) of the Policy (the j.(1) Exclusion) states that the Policy does not apply to property damage "to: (1) Property you own, rent, or occupy . . . ." (J.A. 34).

*THE j.(6) EXCLUSION.*

Section I.A.2.j.(6) of the Policy (the j.(6) Exclusion) states that the Policy does not apply to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (J.A. 34). However, the same

section subsequently states that the j.(6) Exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard.'" *Id.* According to the definition section of the Policy, the term "products-completed operations hazard":

> includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1)  Products that are still in your physical possession; or
>
> (2)  Work that has not yet been completed or abandoned.

(J.A. 42).

The definition section of the Policy defines the term "your product" as:

> a.  Any goods or products, other than real property, manu-factured, sold, handled, distributed or disposed of by:
>
>   (1)  You;
>
>   (2)  Others trading under your name; or
>
>   (3)  A person or organization whose business or assets you have acquired; and
>
> b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

(J.A. 43). The definition section of the Policy further provides that the term "your product" "includes":

> a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";

b.    The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

*Id.*

The definition section of the Policy defines the term "your work" as:

a.    Work or operations performed by you or on your behalf; and

b.    Materials, parts or equipment furnished in connection with such work or operations.

*Id.* The definition section of the Policy further states that the term "your work" "includes":

a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.    The providing of or failure to provide warnings or instructions.

*Id.**

---

*Century also relies upon two other specific exclusions under the Policy (exclusions I.A.2.k. and I.A.2.l.) as alternative bases for affirming the district court. The district court relied upon neither in granting Century's motion for summary judgment. The questions certified herein do not involve exclusion I.A.2.k. or exclusion I.A.2.l.

### III.

### *Contentions of the Parties*

We begin our discussion of the parties' contentions by noting that the parties have stipulated that the moisture damage to the substrate and framing members of the Stoltzes' home occurred during the policy period (December 7, 1989 to December 7, 1990), and that such damage has been continuous since that time. Century contends that denial of coverage is supported by the description of the scope of commercial general liability policies in *C.D. Walters Construction Co. v. Fireman's Insurance Co. of Newark, N.J.*, 316 S.E.2d 709 (S.C. Ct. App. 1984), wherein the South Carolina Court of Appeals stated:

> The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in come capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 712 (internal quotation marks omitted). Regarding the parties' specific arguments in the present appeal, Century first contends the Policy does not afford Golden Hills Builders liability coverage for the cost and expenses of repairs to the substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior because the bulk of the damage occurred after expiration of the policy period. More specifically, Century contends that coverage is not afforded because Golden Hills Builders owned the home throughout the policy period, and therefore, no damage occurred to the Stoltzes during the policy period. In this regard, Century relies upon the Policy's language providing that the Policy will apply to property damage only if "[t]he . . . 'property damage' occurs during the policy period." (J.A.

32). Century primarily relies upon *Browder v. USF&G*, 893 P.2d 132 (Col. 1995) (*en banc*) in support of its contention.

In response, the Stoltzes contend that, at least for the full time period of their legal ownership of the home (beginning February 22, 1991), the continuous trigger of coverage theory first adopted by the South Carolina Supreme Court in *Joe Harden Builders, Inc. v. Aetna Casualty and Surety Co.*, 486 S.E.2d 89 (1997), with respect to cases involving progressive property damage that is not apparent at the time of the underlying injury-causing event, applies to provide coverage. In *Joe Harden Builders*, the South Carolina Supreme Court held with respect to "a standard occurrence insurance policy," *id.* at 89, that provided "coverage for an occurrence that causes property damage 'which occurs during the policy period,'" *id.* at 90, that "coverage is triggered whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent, and *the policy in effect at the time of the injury-in-fact covers all the ensuing damages*," *id.* at 91 (emphasis added). No controlling precedent from the South Carolina Supreme Court or the South Carolina Court of Appeals exists to resolve the issues created by these conflicting contentions of the parties.

Century next contends that even if coverage exists under the initial language of the Policy, coverage is ultimately defeated by the j.(1) exclusion, which excludes coverage for property damage to property owned by the insured, because Golden Hills Builders owned the home during the entire policy period. In support of this contention, Century again relies upon *Browder*, 893 P.2d at 132. The Stoltzes counter that they held equitable title to the home as of June 28, 1990, pursuant to the Purchase Contract. Furthermore, the Stoltzes again rely upon *Joe Harden Builders*. Specifically, they argue that, at least for the full time period of their legal ownership of the home (beginning February 22, 1991), the continuous trigger of coverage theory first adopted by the South Carolina Supreme Court in *Joe Harden Builders* applies to provide coverage. No controlling precedent from the South Carolina Supreme Court or the South Carolina Court of Appeals exists to resolve the issues created by these conflicting contentions of the parties.

Century also contends that coverage is ultimately defeated by the j.(6) Exclusion, which is commonly known as the "'faulty workman-

ship'" exclusion. Patrick J. O'Connor, *Commercial General Liability Coverage*, 19-APR Construction Lawyer 5, 8 (April 1999). Century contends, and the district court agreed, that the language of the j.(6) Exclusion excluding coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," (J.A. 34), should be read broadly to exclude coverage for the damage to the substrate and framing members of the Stoltzes' home. In this regard, Century urges us to read the pronoun "it" and its antecedent ("[t]hat particular part of any property that must be restored, repaired or replaced") as referring to the entirety of the Stoltzes' home, inasmuch as Golden Hills Builders was the general contractor engaged to construct the entirety of the Stoltzes' home. In contrast, the Stoltzes urge a narrow interpretation of the same language. Specifically, the Stoltzes urge us to read the pronoun "it" and its antecedent as referring only to that part of Golden Hills Builders' subcontractor's work that was allegedly defectively constructed, *i.e.*, the home's synthetic stucco exterior. According to the Stoltzes, because they have not alleged defective construction with respect to the substrate and framing members of their home, the j.(6) Exclusion does not apply to exclude liability coverage for the damage to these parts of their home.

At least one court is in accord with Century's position. *George A. Fuller Co. v. United States Fid. & Guar. Co.*, 613 N.Y.S.2d 152, 156 (N.Y. App. Div. 1994) (holding j.(6) Exclusion excluded liability coverage for moisture damage to building caused by defective construction of curtain wall with windows where contractor was responsible for constructing the entire building). Likewise, at least one court is in accord with the Stoltzes' position. *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 382 (Tx. App. 1987) (opining in *dicta* in regard to policy exclusion materially similar to the j.(6) Exclusion that "if defective work is performed by or on behalf of the insured, and such defective work causes damage to other work of the insured which was not defective, then there would be coverage for repair, replacement or restoration of the work which was not defective"). No controlling precedent from the South Carolina Supreme Court or the South Carolina Court of Appeals exists to resolve the issues created by these conflicting contentions of the parties.

The Stoltzes also contend that their interpretation of the pronoun "it" and its antecedent ("[t]hat particular part of any property that

must be restored, repaired or replaced") as found in the j.(6) Exclusion is just as reasonable as the interpretation proposed by Century. They argue that under South Carolina's rules of insurance contract interpretation, the language should, therefore, be interpreted against Century as the drafter of the Policy. *Laidlaw Envtl. Servs. v. Aetna Cas. & Sur. Co.*, 524 S.E.2d 847, 849-50 (S.C. Ct. App. 1999). Century argues the Stoltzes' interpretation of the pronoun "it" in the j.(6) Exclusion and the pronoun's antecedent in that same exclusion is unreasonable.

The Stoltzes next contend that even if coverage is initially removed by the beginning language of the j.(6) Exclusion, the products-completed operations hazard exception to the j.(6) Exclusion restores coverage. As previously set forth, that exception provides that the j.(6) Exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard.'" (J.A. 34). According to the definition section of the Policy, the term "products-completed operations hazard":

> includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1)   Products that are still in your physical possession; or
>
> (2)   Work that has not yet been completed or abandoned.

(J.A. 42).

Century contends the exception does not apply because at the inception of the moisture damage at issue, Golden Hills Builders owned the home. The Stoltzes again counter that they held equitable title to the home as of June 28, 1990, pursuant to the Purchase Contract. Furthermore, the Stoltzes argue that, at least for the full time period of their legal ownership (beginning February 22, 1991), the continuous trigger of coverage theory first adopted by the South Carolina Supreme Court in *Joe Harden Builders, Inc.*, with respect to cases involving progressive property damage, applies to allow coverage under the completed operations hazard exception to the j.(6)

Exclusion. No controlling precedent from the South Carolina Supreme Court or the South Carolina Court of Appeals exists to resolve the issues created by these conflicting contentions of the parties.

IV.

*Questions Certified*

We certify the following questions to the South Carolina Supreme Court:

(1) In light of the parties' stipulation that the damage to the substrate and framing members of the home occurred prior to the expiration of the policy period on December 7, 1990, while Golden Hills Builders still owned the home, and that such damage has been continuous since that time, including time when the Stoltzes have owned the home, does the Policy's language stating that "[t]his insurance applies to . . . 'property damage' only if: . . . [t]he 'property damage' occurs during the policy period," (J.A. 32), preclude the existence of liability coverage in favor of Golden Hills Builders for the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior?

(2) If the first question is answered in the affirmative, then the remaining questions need not be reached. However, if the first question is answered in the negative, the following question must be reached: In light of the parties' stipulation that the damage to the substrate and framing members of the home occurred prior to the expiration of the policy period on December 7, 1990, while Golden Hills Builders still owned the home, and that such damage has been continuous since that time, including time when the Stoltzes have owned the home, does the j(1) Exclusion (excluding coverage for property damage to property the insured "own[s], rent[s], or occup[ies]," (J.A. 34), apply to deny Golden Hills Builders liability coverage for the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of

Golden Hills Builders constructed the home's synthetic stucco exterior?

(3) If the second question is answered in the affirmative, then the remaining questions need not be reached. However, if the second question is answered in the negative, the following question must be reached: Without consideration of the applicability of the exception for "products-completed operations hazard" as set forth in the j.(6) Exclusion, does the j.(6) Exclusion apply to deny Golden Hills Builders liability coverage for the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior?

(4) If the third question is answered in the negative, then this next question need not be reached. However, if the third question is answered in the affirmative, the answer to the following question is dispositive of the present appeal: Does the products-completed operations hazard exception to the j.(6) Exclusion apply to restore liability coverage for the cost and expenses of repairs to the properly constructed substrate and framing members of the Stoltzes' home necessitated by moisture damage caused by the alleged defective manner in which a subcontractor of Golden Hills Builders constructed the home's synthetic stucco exterior?

This court acknowledges that the Supreme Court of South Carolina may reformulate these questions.

V.

*Conclusion*

We conclude that there is no precedent from the South Carolina Supreme Court or the South Carolina Court of Appeals dispositive of the questions certified. Accordingly, pursuant to the privilege made available by Rule 228 of the South Carolina Appellate Court Rules, we respectfully:

(1) certify this matter to the South Carolina Supreme Court for resolution of the questions presented in Part IV of this Order of Certification;

(2) order the Clerk of this court to forward to the South Carolina Supreme Court, under the official seal of this court, a copy of this Order of Certification, together with the original or copies of the record before this court to the extent requested by the South Carolina Supreme Court; and

(3) order that any request for all or part of the record be fulfilled by the Clerk of this court simply upon notification from the Clerk of the South Carolina Supreme Court.

This Order of Certification is entered with the concurrences of Judge Wilkins and Judge Williams, United States Circuit Judges.

Judge Clyde H. Hamilton
Senior United States Circuit Judge

April 16, 2001