[775 NYS2d 262]

Hotel des Artistes, Inc., Appellant, v General Accident Insurance Company of America, Respondent.

First Department, April 15, 2004

**APPEARANCES OF COUNSEL**

*Heller Ehrman White & McAuliffe LLP* (*Edward M. Joyce, Lisa M. Cirando* and *E. Joshua Rosenkranz* of counsel), for appellant.

*Joseph C. Scibilia & Associates* (*Joseph C. Scibilia* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.

The primary issue on this appeal is whether an insurer has a

duty to defend its insured against claims in an underlying action that fall within the embrace of a commercial general liability (CGL) policy issued by the insurer, notwithstanding the fact that the insured's legal liability arises in contract, not tort. In addition, we must decide whether an insured is entitled to recover the entire amount paid in settlement as a consequence of the insurer's alleged breach of its duty to defend, and whether the insurer in this case waived its late-notice defense due to its failure to timely raise it.

We find that the insurer breached its duty to defend in this instance, but that the insured may only recover that portion of the settlement amount relating to covered losses. We also hold that the insurer waived its late-notice defense by failing to raise it within a reasonable time. Accordingly, we reverse and remand for further proceedings.

On December 23, 1997, a fire erupted at 1 West 67th Street in Manhattan in a building owned by plaintiff Hotel des Artistes, Inc. The fire severely damaged the ground-floor restaurant known as Café des Artistes, a tenant in the building. The leased premises were rendered wholly unusable due to the fire and ensuing water damage, which required the restaurant to suspend its operations for a period of more than four months. After several conversations with the hotel over the scope of the repairs, the restaurant eventually obtained the hotel's approval to do the repair work. The work was completed by May 1, 1998 and the restaurant reopened on that day.

In January 1999, the restaurant commenced a lawsuit against the hotel (underlying action) seeking to recover damages for the cost of repairs to the leased premises and for business interruption losses. Specifically, the restaurant's first cause of action alleged that the hotel breached its duty under the lease to repair the leased premises after the fire, and sought reimbursement of $628,810 for the cost of repairs. The second cause of action alleged a $600,000 loss of business interruption insurance due to the hotel's unreasonable delay in approving the restaurant's architectural and mechanical plans. In this regard, the restaurant's business interruption insurer denied coverage for business interruption losses for the period between February 15, 1998 and April 30, 1998 on the ground that the repairs should have been completed by February 15, 1998.

The third cause of action sought recovery of $32,000 representing the cost paid by the restaurant for repairs to certain structural and building systems that allegedly were the

responsibility of the hotel under the lease. The fourth cause of action sought recovery of attorneys' fees pursuant to the lease provision authorizing such recovery by the tenant where it is successful in enforcing its rights under the lease.

Prior to the fire, defendant General Accident Insurance Company of America (GAIC) had issued a CGL policy (the policy) to nonparty Douglas Elliman Purchasing Group, with the hotel named as an additional insured. The policy covered the period between December 17, 1997 and December 19, 1998, which encompasses the date of the fire and all subsequent acts and omissions relevant to the underlying action.

Part A of the subject policy provided coverage for "Bodily Injury and Property Damage" and states:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

> "We will have the right and duty to defend the insured against any 'suit' seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply . . . ."

Part A further states that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period." The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The policy further states that an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy also includes a contractual liability exclusion, which provided that "[t]his insurance does not apply to '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, the exclusion was inapplicable to liability for damages (1) that the insured would have in the absence of the contract or agreement, or (2) assumed in a contract or agreement that is an "insured contract." The policy

definition of "insured contract" includes "a contract for a lease of premises."

In a January 25, 1999 letter, the hotel asked its insurance broker to notify its fire and liability carriers of the restaurant's lawsuit. On January 29, 1999, the broker forwarded a copy of the summons and complaint in the underlying action to defendant GAIC. By letter dated February 2, 1999, GAIC disclaimed coverage as follows:

> "Upon review of your policy and the allegations in the complaint, we must advise you that there is no coverage for this lawsuit. Your policy does not cover a claim for 'Breach of Contract.' We do not cover the liability for failure to perform or comply with the terms contained in a contract. It is alleged that the Hotel[ ] failed to restore the structure of the premises back to its pre-accident state in a timely manner based on the [parties] lease. There is no damage alleged that would qualify under the definition of 'bodily injury,' 'property damage' . . . which are the only damages your policy covers."

GAIC did not cite any specific exclusion in its disclaimer letter. However, GAIC did state that it was not waiving any rights or defenses under the policy not mentioned in the disclaimer letter.

Based on GAIC's disclaimer, the hotel hired its own counsel to defend it against the restaurant's lawsuit. By letter dated October 17, 2000, the hotel notified GAIC that it had negotiated a potential settlement of the restaurant's lawsuit, and further requested that GAIC review the terms of the proposed settlement and advise whether it would reconsider its disclaimer. GAIC did not respond, and the hotel settled the matter with the restaurant for approximately $150,000.

In April 2001, the hotel commenced the instant action for a declaratory judgment and breach of the insurance policy. In July 2001, the hotel moved for summary judgment declaring that GAIC breached its duty to defend under the policy and, therefore, it was liable for the costs incurred in defending the restaurant's suit as well as the sum paid in settlement of the action. The hotel argued that the restaurant's claims in the underlying action fell potentially within the scope of coverage since the claims arose from the fire and sought damages that fell within the policy's definition of "property damage." The hotel further asserted that under the policy, it was irrelevant

that the hotel's legal obligation to pay arose from a contract, as opposed to a tort duty.

GAIC cross-moved for summary judgment, arguing that the claims in the underlying action were clearly outside the policy's coverage since the policy did not provide coverage "to companies or individuals when they are sued because they failed to live up to their claimed contractual obligations." According to GAIC, since the restaurant's complaint did not allege any tortious conduct by the hotel in causing the fire, the policy clearly did not cover these contract-based losses and no duty to defend existed. Alternatively, GAIC argued that any coverage was vitiated by the hotel's failure to comply with the policy provision requiring notice of occurrence that might result in a claim "as soon as practicable."

In its April 17, 2002 order, Supreme Court granted the hotel's motion to the extent of declaring that GAIC had a duty to defend the hotel in the underlying action. Although the court found no duty to defend on the second cause of action since "the gravamen is not that Hotel is liable to the [restaurant] for the damage done by the fire, but, rather, that Hotel breached a contractual duty owed to its tenant," it held that the duty to defend was triggered by the restaurant's first cause of action which sought recovery for "property damage initially caused by the fire independent of Hotel's contractual obligations."[1] On the issue of indemnification, the court denied the hotel's motion for summary judgment, finding a question of fact as to what portion of the settlement amount, if any, was attributable to the claim raised in the first cause of action.

Both parties moved for reargument, and in its January 6, 2003 order, the court granted GAIC's cross motion for reargument, and upon reargument, declared that GAIC had no duty to defend or indemnify the hotel with respect to any of the causes of action in the underlying complaint, and dismissed the hotel's complaint. The court found that upon reconsideration, the first cause of action merely alleged that the hotel breached its contractual duty under the lease, and did not contain any allegation that the hotel negligently caused the restaurant's property damage. Accordingly, the court ruled that no duty to defend existed because the underlying complaint failed to allege any facts or grounds that arguably fall within the terms of the policy.

---

1. The court also held that no duty to defend existed on the third and fourth causes of action for repairs apparently unrelated to the fire and for attorneys' fees, respectively.

On appeal, the hotel argues that GAIC had a duty to defend it in the underlying action because the policy expressly covered losses from "property damage," irrespective of whether the source of the hotel's legal obligation to pay was based in contract or tort. In addition, the hotel contends that having breached its duty to defend, GAIC is liable for the full amount of the settlement, not merely a portion of the settlement amount relating to covered losses.

"Where an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify" (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 310 [1984]). An insurer's duty to defend must be determined from the allegations of the complaint and the terms of the policy (*Incorporated Vil. of Cedarhurst v Hanover Ins. Co.*, 89 NY2d 293, 298 [1996]; *Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d 66, 73 [1989]). "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend" (*Technicon Elecs. Corp. v American Home Assur. Co.*, 74 NY2d at 73, citing *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 669-670 [1981]).

As the Court of Appeals has stated, "[t]he insured's right to representation and the insurer's correlative duty to defend suits, however groundless, false or fraudulent, are in a sense 'litigation insurance' expressly provided by the insurance contract" (*Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d 419, 423-424 [1985], quoting *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 326 [1974]). "If the claims asserted, though frivolous, are within policy coverage, the insurer must defend irrespective of ultimate liability" (*Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d at 424). Thus, an insurer may escape its duty to defend under the policy "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy" (*Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d at 424, quoting *Spoor-Lasher Co. v Aetna Cas. & Sur. Co.*, 39 NY2d 875, 876 [1976]).

In its February 2, 1999 disclaimer letter, GAIC based its refusal to defend the hotel on its contention that its CGL policy does not provide coverage for losses caused by the insured's failure to perform its contractual obligations. According to GAIC,

the policy covers only "property damage" resulting from the negligence of the hotel, i.e., tort liability. Without relying on any specific policy exclusion, GAIC argues that the underlying claims fall outside the policy's coverage since it was not the intent of the policy to cover claims against the hotel for the breach of its lease obligations. We disagree.

The obvious flaw in GAIC's argument is that its interpretation of the policy conflicts with the plain meaning of the actual policy terms (*see Teichman v Community Hosp.*, 87 NY2d 514, 520 [1996]). As noted above, the policy's insuring agreement stated that GAIC "will pay those sums that the [Hotel] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Thus, in order for coverage to exist, three things must be shown: (1) the hotel is legally obligated to pay damages; (2) the hotel's legal obligation to pay is "because of" property damage; and (3) the property damage must be of a type to which this insurance applies.

■ In our view, the allegations in the underlying complaint against the hotel clearly fall within the embrace of the policy. The restaurant's first cause of action alleged that the hotel breached its duty under the lease to promptly restore the leased premises, and therefore it was legally obligated to reimburse the restaurant for the cost of restoration.[2] Next, the first two causes of action make it clear that recovery was sought "because of" property damage resulting from the fire. Finally, there is no serious dispute that this policy applies to the property damage suffered here, since the loss at issue fell within the policy period and territory, and resulted from an "occurrence." Thus, insofar as the coverage provisions of the policy are concerned, the claim in the first cause of action should have triggered the duty to defend.

Significantly, nowhere in the policy's coverage provisions are there any restrictions on the source or theory of the insured's legal liability. For instance, nowhere is it said that the insured's "legal obligation to pay damages because of property damage" is limited to the insured's liability in tort. Nor is there any

---

**2.** Although GAIC argues that the hotel was not obligated to restore the premises under the lease, the evidence is equivocal on this point. In any event, this argument would not defeat the duty to defend since GAIC was obligated to defend its insured against any claims that fall potentially within the policy's coverage, even if those claims are "groundless, false or fraudulent" (*Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d at 423).

other language in the coverage provisions that could be interpreted to exclude liability that is derived from a contractual obligation. In short, nothing in the coverage terms of the policy even implies a distinction between liability acquired by contract or in tort (*see Touchette Corp. v Merchants Mut. Ins. Co.*, 76 AD2d 7, 10-11 [1980]; *Tenney v Insurance Co. of N. Am.*, 409 F Supp 746, 748 [SD NY 1975]).

Despite the absence of such a distinction, the motion court improperly engrafted onto the policy an exclusion for claims "sounding in contract." This was error. To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 [1993]; *Throgs Neck Bagels v GA Ins. Co.*, 241 AD2d 66, 71 [1998]). Further, "[p]olicy exclusions 'are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction' " (*Incorporated Vil. of Cedarhurst v Hanover Ins. Co.*, 89 NY2d at 298, quoting *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d at 311).

GAIC has failed to meet its burden of demonstrating the applicability of a policy exclusion. In fact, while the policy does contain an exclusion for "contractual liability," GAIC did not cite this exclusion in its disclaimer and did not rely on it before the motion court or on this appeal. Thus, we can only conclude that GAIC concedes that no policy exclusion applies in this particular case. In light of this concession, GAIC's argument boils down to the following: even though the underlying claims against the hotel do not fall within the contractual liability exclusion, these claims are otherwise excluded, presumably by implication, because the policy was not intended to cover losses resulting from the breach of a contractual obligation. Given the above-stated principles governing the applicability of insurance policy exclusions, as well as the oft-cited principle that ambiguities in an insurance policy must be construed against the insurer-drafter (*Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.*, 60 NY2d 390, 398 [1983]; *Roofers' Joint Training, Apprentice & Educ. Comm. v General Acc. Ins. Co.*, 275 AD2d 90, 91 [2000]), the weakness of this position should be manifest.

Although some prior appellate holdings have suggested that contractual liability is not covered under the type of CGL policy at issue here, a closer examination of those cases shows that they are distinguishable on the grounds that either the

contractual liability at issue in those cases was expressly excluded from coverage, or the policy did not cover the loss due to the absence of an "occurrence."

For instance, in *George A. Fuller Co. v United States Fid. & Guar. Co.* (200 AD2d 255, 257-259 [1994], *lv denied* 84 NY2d 806 [1994]), the underlying action involved a property owner's lawsuit against the insured-contractor for negligent performance of a construction contract. The defendant insurer's CGL policy insured the insured-contractor for "property damage" caused by an "occurrence," but excluded "property damage" to the insured's work product, i.e., the building being constructed.

After United States Fidelity and Guaranty Company (USF&G) disclaimed coverage, and the motion court ruled that a duty to defend the contractor existed, this Court reversed and declared that no coverage existed because the complaint against the contractor in the underlying action did not allege an "occurrence" resulting in "property damage" as contemplated by the CGL policy (*id.* at 259). We also held that since all the damages related to the defectively constructed building, coverage was excluded under the work product exclusion (*id.* at 260-261).

The present case is distinguishable from *Fuller* because here, there was in fact "property damage" resulting from an "occurrence" as required under the policy, and further, there was no work product exclusion at play in this case. Nevertheless, GAIC and the motion court rely on statements in *Fuller* to extract the erroneous principle that CGL policies never cover contractual liability.

For example, GAIC cites the *Fuller* court's statement (200 AD2d at 260) that USF&G's liability policy "was never intended to insure Fuller's work product or Fuller's compliance, as a general contractor or construction manager, with its contractual obligations." However, that statement must be read in the context of the facts of *Fuller*, where the insured's contractual obligation involved the proper construction of a building, and the policy at issue expressly excluded from coverage a breach of that same obligation. Thus, the policy in *Fuller* did not exclude contractual liability because such liability fell outside the policy's coverage in all circumstances, as GAIC argues—rather, there was no coverage because the contractual liability being sued upon was expressly excluded elsewhere in the policy, and because there was no "occurrence" as required by the policy.

*Hartford Acc. & Indem. Co. v A.P. Reale & Sons* (228 AD2d 935 [1996]) is distinguishable for similar reasons. In *Hartford,*

the insured contractor was sued for faulty work under the construction contract and sought a defense and indemnity from its CGL insurer, who disclaimed. The Third Department held that based upon the work product exclusion in the subject policy, no duty to defend existed (*id.* at 936).

However, in dicta, the *Hartford* court (228 AD2d at 936) also stated that "the purpose of a [CGL] policy . . . is to provide coverage for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not what the damaged person bargained for" (*see also Pavarini Constr. Co. v Continental Ins. Co.*, 304 AD2d 501, 501-502 [2003]). This dicta has no bearing on this case because there is no work product exclusion in this case and the hotel is not being sued for economic loss resulting from its own defective work product.

Further, in *Willets Point Contr. Corp. v Hartford Ins. Group* (75 AD2d 254 [1980], *affd* 53 NY2d 879 [1981]), the insured-contractor was sued by a landowner for failing to meet its contractual obligations to the county to avoid obstructing adjacent properties during a construction project. Although the Second Department stated (75 AD2d at 259) that no duty to defend existed because "[t]he complaint in the underlying action sounds in breach of contract only and thus clearly seeks to recover for damages caused in a manner outside the [policy's] coverage," the specific policy at issue in that case contained an exclusion for "damages arising from the breach of [contractual] representations or warranties made by the named insured as to the level of performance of its work." (*Id.*) Thus, since the contractual liability at issue in *Willets* was specifically excluded under the policy, *Willets* cannot be read to exclude from coverage all contract-based liability.

In contrast to these authorities, we believe that the Fourth Department's holding in *Touchette Corp. v Merchants Mut. Ins. Co.* (76 AD2d 7 [1980]) is factually similar and provides the correct analysis on this issue. In *Touchette* (76 AD2d at 8-9), the insured was a data processing company that was sued by one of its clients for negligent performance of its data processing services contract. While the original complaint included causes of action for both breach of contract and negligence, the negligence claim was subsequently dismissed, after which the insurer withdrew its defense. The policy issued by the insurer required it to indemnify the insured for all sums the insured becomes "legally obligated to pay as damages on account of any claim

against the Insured and caused by any negligent act, error or omission of the Insured." (*Id.* at 9.)

In the insured's declaratory judgment action, the motion court granted the insured's motion for a declaration that the insurer must defend and indemnify it (*id.*). On appeal, the insurer argued that the policy did not cover breach of contract claims against the insured, and since the negligence cause of action had been dismissed, there was no longer a duty to defend. The Fourth Department, rejecting the insurer's argument that the duty to defend exists only where the insured is sued in negligence, stated (*id.* at 10):

> "It is not the form of the pleading which determines coverage . . . it is the nature of the insured's conduct and nothing in the language of the policy suggests that claims are to be covered only if sued in negligence . . . [I]f [the insured's] conduct comes within th[e] defined risk, it is no less 'legally obligated' to pay an award in a contract action than in a tort action."

In this case, the duty to defend is even clearer than in *Touchette* since there is no "negligent act, error or omission" limitation in the instant policy. Rather, in this policy GAIC agreed to defend and indemnify the hotel for all sums the hotel becomes "legally obligated to pay as damages because of . . . 'property damage,' " without any limitation or restriction as to the source of legal obligation. There is no requirement that the hotel engage in negligent conduct, commit any other tort or even be at fault for the property damage, so long as it is "legally obligated to pay" for it. Without such requirements, one cannot read into the policy an exclusion for contract-based liability that is not stated in the policy (*see Tenney v Insurance Co.*, 409 F Supp at 748 [no language in liability policy exempting from coverage a legal obligation for liability for personal injury because the obligation arises from a contractual relationship with a nominee rather than a direct action against the insured]; *Vandenberg v Superior Ct.*, 21 Cal 4th 815, 840, 982 P2d 229, 245 [Sup Ct 1999] [reasonable layperson would understand "legally obligated to pay" to refer to any obligation which is being enforced under law, whether pursuant to contract or tort liability]).

Accordingly, we hold that GAIC had a duty to defend the hotel in the underlying action because the claims in that action were potentially within the policy's coverage, and the policy did not

otherwise exclude liability in contract in clear and unmistakable terms. In light of our finding that the policy did not exclude all contractual liability, it is unnecessary for us to consider the hotel's alternative argument that not all of the underlying claims were based on the lease.

On the issue of late notice, GAIC argues that even if its policy provided coverage under these circumstances, the policy was vitiated by the hotel's failure to comply with the policy provision requiring notice of an occurrence which may result in a claim "as soon as practicable." This argument is rejected. GAIC did not disclaim on the basis of late notice, nor did it raise the late-notice issue as a defense in its answer. Instead, GAIC first raised the issue in its cross motion for summary judgment, some 2¹/₂ years after it first received notice of the claim.

"An insurer must give written notice of disclaimer on the ground of late notice 'as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability,' and failure to do so 'precludes effective disclaimer' " (*Matter of Firemen's Fund Ins. Co. v Hopkins*, 88 NY2d 836, 837 [1996], quoting *Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979]). GAIC's failure to disclaim upon the ground of late notice, and failure to raise the late-notice issue in its answer (*see* CPLR 3211 [e]), constitute a waiver of this defense.

Finally, we reject the hotel's argument that as a consequence of GAIC's wrongful breach of its duty to defend, GAIC is required to indemnify the hotel for the entire amount of the settlement in the underlying action, without regard to whether that entire sum relates to covered losses. In *Servidone Constr. Corp. v Security Ins. Co.* (64 NY2d 419, 423 [1985]), the Court of Appeals held that "an insurer's breach of [its] duty to defend does not create coverage and that, even in cases of negotiated settlements, there can be no duty to indemnify unless there is first a covered loss." Although it will be the insurer's burden to prove that "the loss compromised by the insured was not within policy coverage" (*id.* at 425), until that determination is made, it is impermissible for a court to "enlarge[ ] the bargained-for coverage as a penalty for breach of the duty to defend" (*id.* at 424). Accordingly, we remand the matter to Supreme Court for a determination on the issues of coverage and indemnification.

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered January 6, 2003, which granted defendant's cross motion for reargument of an earlier

April 17, 2002 order, and upon reargument, declared that the defendant had no duty to defend or indemnify plaintiff with respect to any of the causes of action in the underlying complaint, and dismissed the instant complaint, should be reversed, on the law, with costs, defendant's cross motion for reargument denied, the complaint reinstated, and plaintiff's motion for summary judgment granted to the extent of declaring that defendant breached its duty to defend plaintiff in the underlying action and remanding the matter to Supreme Court for further proceedings, including a determination on the issues of coverage and indemnification. The appeal from the order, same court and Justice, entered April 17, 2002, which granted plaintiff's motion for summary judgment to the extent of declaring that defendant insurer had a duty to defend plaintiff with respect to the first cause of action of the underlying complaint and denied defendant's cross motion for summary judgment, should be dismissed, without costs, as academic.

Tom, J.P., Saxe and Williams, JJ., concur.

Order, Supreme Court, New York County, entered January 6, 2003, reversed, on the law, with costs, defendant's cross motion for reargument of an earlier order, same court, entered April 17, 2002, denied, the complaint reinstated, and plaintiff's motion for summary judgment granted to the extent of declaring that defendant breached its duty to defend plaintiff in the underlying action and remanding the matter to Supreme Court for further proceedings, including a determination on the issues of coverage and indemnification. Appeal from the April 17, 2002 order dismissed, without costs, as academic.