BRISCOE , Circuit Judge, dissenting.
I
I respectfully dissent because I believe New York law forecloses insurance coverage for damage to the work product of an insured, which is precisely the type of damage at issue here. Therefore, because I agree with the district court's conclusion that "New York law's governing definition of 'occurrence' does not recognize liability *972 coverage" in this instance, D. Ct. Order at 56, I would affirm the district court.
The rule among intermediate appellate courts in New York has been that a CGL policy that includes a standard definition of "occurrence":
does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product.
George A. Fuller Co. v. U.S. Fid. & Guar. Co., 200 A.D.2d 255, 613 N.Y.S.2d 152, 155 (1st Dep't. 1994).[1]
In recent years, New York courts have applied this rule to hold that the insured can only recover when the "damage caused by faulty workmanship [is] to something other than [to] the work product." I.J. White Corp. v. Columbia Cas. Co., 105 A.D.3d 531, 964 N.Y.S.2d 21, 23 (1st Dep't. 2013) (coverage applied because the damage was to cakes, not the freezer that the insured built). Further, intermediate state appellate decisions have held that even when a subcontractor caused the damage, an insured general contractor cannot be covered for damage to its own work product because it is "responsible for the entire project[,] and all work done by [any] subcontractor was done on" behalf of the general contractor. Pavarini Constr. Co. v. Cont'l Ins. Co., 304 A.D.2d 501, 759 N.Y.S.2d 56, 57 (1st Dep't. 2003) ; see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turner Constr. Co., 119 A.D.3d 103, 986 N.Y.S.2d 74, 77 (1st Dep't. 2014).
New York intermediate appellate courts have therefore developed a rule that a CGL policy using the standard definition of "occurrence" cannot cover damage to the insured's own work product, even when errors by the insured or its subcontractors cause the damage. Applying that rule to this case, there was no "occurrence"-which would trigger coverage-because the damage was to the jet bubbling reactors, which were B&V's own work. Because B&V has not satisfied its "initial burden of proving that the damage was the result of an 'accident' or 'occurrence,' " we need not proceed to examine whether an exclusion and an exception to that exclusion apply. Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 746 N.Y.S.2d 622, 774 N.E.2d 687, 692 (2002).
Given this analysis, I would affirm the district court.
II
The majority, however, reverses the district court. In doing so, the majority concludes there is an insured "occurrence" in this case, in part because it does not apply the New York cases. It instead determines that the rule applied in Fuller, Pavarini, I.J. White and other New York appellate cases is "outdated" and inapplicable to this case because the rule's logic preceded the Insurance Services Office, Inc.'s 1986 revisions to the standard CGL policies, Op. at ----, making the cases "materially distinguishable." Id. at ---- n.19. In other words, the majority concludes the Fuller rule only applies where the CGL policy does not include a Subcontractor Exception, even though no New York court has limited the rule in this way. See D. Ct. Order at 31 (concluding there is no indication in New *973 York law that a Subcontractor Exception would alter New York law, and noting that an unpublished federal district court case involving a Subcontractor Exception "does not reflect any argument or discussion of this exception as having the effect of modifying New York's law") (citing Ohio Cas. Ins. Co. v. Lewis & Clinch, Inc., No. 7:12-CV-1872 (GTS/TWD), 2014 WL 6078572 (N.D.N.Y. Nov. 13, 2014) ).[2]
I conclude, however, that in declining to apply the rule that New York's intermediate appellate courts have applied we exceed our proper role as a court of review in a diversity action. Our role is to determine how the New York Court of Appeals would decide this case. To accomplish this task, we must apply relevant New York case law. If the New York courts have held that damage to the insured's own work product is not an "occurrence," even if the damage results from a subcontractor's error, it is not our role to tell the New York courts that their rulings do not carry any precedential weight or are limited to their facts.
Instead, in the circumstances presented here, where "there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court would decide otherwise." United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 957 (10th Cir. 2011) (quotation omitted). The majority, however, believes we do have convincing evidence that the New York Court of Appeals would not apply the Fuller rule to a CGL policy with a Subcontractor Exception. The majority reviews extrinsic evidence about how CGL policies are generally drafted, scholarly sources, and persuasive authority from courts applying the law of other jurisdictions. Armed with these authorities, the majority "predict[s] the New York Court of Appeals would decline to follow [the Fuller rule] and instead would join the clear trend among state supreme courts holding that damage from faulty subcontractor work constitutes an 'occurrence.' " Op. at ----.
This is a bridge too far. In reaching its conclusion, the majority takes the sort of step the Supreme Court has criticized by "turn[ing] to the law of other jurisdictions" to determine what the New York Court of Appeals "would probably" decide in this case. Lehman Bros. v. Schein, 416 U.S. 386, 389, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). This might be acceptable if existing New York law were "difficult or uncertain." Colony Ins. Co. v. Burke, 698 F.3d 1222, 1235 (10th Cir. 2012) (quotation omitted). But that is not the case here. It is not difficult to ascertain how New York courts would decide the issues presented here-nor does the majority say it would be difficult. The majority merely attempts to distinguish New York case law, and then describes New York law as if "this case apparently raises an issue of first impression." Walker v. BuildDirect.com Techs., Inc., 733 F.3d 1001, 1005 (10th Cir. 2013).[3]
Even assuming, arguendo , that we could legitimately distinguish Fuller and its progeny, meaning there are "no controlling precedents,"
*974 Elkins v. Moreno, 435 U.S. 647, 662, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978),[4] and "a state court has not yet had the opportunity to interpret the pertinent" question, Kansas Judicial Review v. Stout, 519 F.3d 1107, 1119 (10th Cir. 2008) (quotation omitted),[5] I do not believe we should exercise our discretion to decide how the New York Court of Appeals would rule.[6] Rather, if there are truly no New York cases to guide us, certifying the question to the New York Court of Appeals acknowledges that "[w]hen federal judges [outside New York] attempt to predict uncertain [New York] law, they act ... as 'outsiders' lacking the common exposure to local law which comes from sitting in the jurisdiction." Lehman Bros., 416 U.S. at 391, 94 S.Ct. 1741. In other words, I do not believe federal courts should predict what a state court will likely do, without any state guidance, because "a State can make just the opposite [determination of what the federal court predicts] her law" to be. Id. at 389, 94 S.Ct. 1741.[7]
Therefore, even if New York law were distinguishable-which, as stated above, I do not believe it is-I would not reverse the district court, but would certify the question to the New York Court of Appeals.

See also Eurotech Constr. Corp. v. QBE Ins. Corp., 137 A.D.3d 605, 26 N.Y.S.3d 703 (1st Dep't. 2016) ; Bonded Concrete, Inc. v. Transcon. Ins. Co., 12 A.D.3d 761, 784 N.Y.S.2d 212, 213 (3d Dep't. 2004) ; Baker Residential Ltd. P'ship v. Travelers Ins. Co., 10 A.D.3d 586, 782 N.Y.S.2d 249, 250 (1st Dep't. 2004).

See also Thruway Produce, Inc. v. Mass. Bay Ins. Co., 114 F.Supp.3d 81, 97 (W.D.N.Y. 2015) (denying coverage, despite a Subcontractor Exception); Aquatectonics, Inc. v. Hartford Cas. Ins. Co., No. 10-CV-2935 (DRH) (ARL), 2012 WL 1020313, at *8 (E.D.N.Y. Mar. 26, 2012) (relying on Fuller to deny coverage, despite a Subcontractor Exception).

Certified question answered, 349 P.3d 549 (Okla. 2015).

Certified question answered sub. Nom., Toll v. Moreno, 284 Md. 425, 397 A.2d 1009 (1979).

Certified question answered, 287 Kan. 450, 196 P.3d 1162 (Kan. 2008), opinion after certified question answered, 562 F.3d 1240 (10th Cir. 2009).

The majority is correct that, as an initial matter, we are tasked with discerning what the New York Court of Appeals would decide if this case came before it. Op. at ---- n.7 (citing Bird v. W. Valley City, 832 F.3d 1188, 1199 (10th Cir. 2016) ). Yet, if-hypothetically-a review of New York cases does not indicate what the New York Court of Appeals would likely decide, it is not our place to guess about the result. Though the majority portrays this dissent as treating the two forms of analysis interchangeably, see id., I emphasize that I believe we can discern how the New York Court of Appeals would rule based on existing New York case law. But if there is any debate regarding the clarity of New York law, we should certify the question.

The parties have not moved to certify, but it is within our authority to certify sua sponte . See State Farm Mut. Auto. Ins. Co. v. Fisher, 609 F.3d 1051, 1058 (10th Cir. 2010).