FILED
United States Court of Appeals
Tenth Circuit

**June 8, 2026**

**Christopher M. Wolpert
Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

NEW MEXICO TRAPPERS
ASSOCIATION; NATIONAL
TRAPPERS ASSOCIATION; FUR
TAKERS OF AMERICA, INC.,

     Plaintiffs - Appellants,

v.

RAUL TORREZ, in his official capacity as
Attorney General of New Mexico; TIRZIO
LOPEZ, in his official capacity as Vice
Chair of the New Mexico State Game
Commission; MICHAEL SLOANE, in his
official capacity as Director of the New
Mexico Department of Game and Fish,

     Defendants - Appellees.

_____

ANIMAL PROTECTION VOTERS;
HUMANE WORLD FOR ANIMALS;
ANIMAL PROTECTION NEW MEXICO;
WILDEARTH GUARDIANS,

     Amici Curiae.

No. 25-2117

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:23-CV-00444-MV-SCY)**

_____

Gary R. Leistico of Leistico & Esch, PLLC, Clear Lake, Minnesota, for Plaintiffs –
Appellants.

Amber Fayerberg, Fayerberg Dodd, LLC, Albuquerque, New Mexico (Christopher A. Dodd of Fayerberg Dodd, LLC, Albuquerque, New Mexico, Joseph Goldberg of Freedman Boyd Hollander & Goldberg, P.A., Albuquerque, New Mexico, Ellen Venegas, NM Department of Justice, Santa Fe, New Mexico, and Lawrence M. Marcus, NM Department of Justice, Albuquerque, New Mexico with her on the briefs) for Defendants - Appellees.

Katherine Hendrix and Nicholas Arrivo of Humane World for Animals, Washington, DC, filed an Amici Curiae brief in support of Appellees.

Jennifer Schwartz of Wildearth Guardians, Portland, Oregon, filed an Amicus Curiae brief in opposition of Appellants.

_____

Before **BACHARACH**, **EBEL**, and **KELLY**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Plaintiffs-Appellants, the New Mexico Trappers Association, the National Trappers Association, and the Fur Takers of America, Inc. (the "Trappers"), are non-profit organizations dedicated to trappers' rights. They brought suit against Defendants-Appellees, several members of the New Mexico state government,[1] challenging the New Mexico Wildlife Conservation and Public Safety Act (the "Act"), which prohibits the trapping of animals in New Mexico. N.M. Stat. Ann. §§ 17-11-1 to -5 (2026). The district court dismissed the Trappers' federal and state constitutional claims without

_____

[1] The original Defendants were named in their official capacities and include Raúl Torrez, New Mexico Attorney General, Tirzio Lopez, Vice-Chair of the New Mexico State Game Commission, and Michael Sloane, Director of the New Mexico Department of Game and Fish. Aplt. App. 32. Richard Stump, Chair of the New Mexico State Game Commission, has since been substituted for Tirzio Lopez. Id.

2

prejudice for lack of standing and declined to exercise supplemental jurisdiction over the remaining state statutory claim.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

The Act prohibits using "a trap, snare or wildlife poison for purposes of capturing, injuring or killing an animal on public land[.]"  N.M. Stat. Ann. § 17-11-3 (2026).  There are several exceptions, including the following:

> The provisions of the Wildlife Conservation and Public Safety Act do not apply to . . . enrolled members of a federally recognized Indian nation, tribe or pueblo when trapping is conducted solely for religious or ceremonial purposes <u>pursuant to rules issued by the department of game and fish</u> in collaboration with the secretary of Indian affairs and consistent with federal procedures for recognition and protection of bona fide Indian nation, tribe or pueblo religious ceremonies.

<u>Id.</u> § 17-11-4(H) (emphasis added) (the "exception").

The Trappers filed suit on May 22, 2023, alleging violations of the Equal Protection Clause of the U.S. Constitution (Count One), the Equal Protection Clause of the New Mexico Constitution (Count Two), the Establishment Clause of the U.S. Constitution (Count Three), the Establishment Clause of the New Mexico Constitution (Count Four), and the New Mexico Civil Rights Act (Count Five).  Aplt. App. 12–18. They sought declaratory and injunctive relief prohibiting the Act's enforcement.  <u>Id.</u> at 19.  The Trappers did not challenge the Act's general prohibition against trapping in their complaint; they alleged only that the exception violates their constitutional and statutory rights.  <u>Id.</u> at 12–18.  New Mexico has not promulgated any rules pursuant to the exception.  Aplt. App. 33; Aplee. Br. at 2.  Specifically, the Trappers alleged in their

3

complaint that "[t]he Act denies equal protection of the law as it permits enrolled members of federally recognized Indian nations, tribes, or pueblos to trap on public land for specific purposes while denying similarly situated individuals that same right." Aplt. App. 12, 14. Further, they claimed that "the Act both aids and prefers Native American religions over other religions[,] . . . Native American modes of worship over other modes of worship[,] and . . . religious activities over non-religious activities." Id. at 15–17.

Defendants filed motions to dismiss the Trappers' complaint for failure to state a claim and for lack of standing. Aplee. Supp. App. 8–35, 36–62. In their response to the motions to dismiss, the Trappers stated explicitly and for the first time that they "have demonstrated economic, recreational, aesthetic, psychological, and stigmatic injuries as a direct result of the . . . Act." Id. at 76. They maintain that trapping "is a fundamental part of who they are[,]" and the Act prohibits them from engaging in this activity while permitting others to do so. Id. On the psychological injury, they argued the Act "endorses another's religion" and excludes the Trappers "exclusively because they are not in the favored religious and/or racial group." Id. at 77. On the stigmatic injury, they argued the Act "discriminates based on membership in groups that require a certain heritage/national origin" and they cannot trap because they are not members of that group. Id. at 78.

After considering the "clarif[ied]" theories of injury from the Trappers' response, the district court dismissed the constitutional claims for lack of standing. Aplt. App. 33, 35–39. The court held that the Trappers' alleged economic, recreational, aesthetic, and psychological injuries are not redressable because, even if the court were to strike the

4

exception, the Act would still prohibit the Trappers from trapping. Id. at 35–37. Although their stigmatic injury is redressable, the harm alleged does not rise to a judicially cognizable level, and otherwise their injury is not ripe for review. Id. at 37–39. The court declined to exercise supplemental jurisdiction over the remaining New Mexico Civil Rights Act claim. Id. at 39–41.

## Discussion

We review the district court's grant of a motion to dismiss de novo, "accepting all well-pleaded allegations of the complaint as true and considering them in the light most favorable to the nonmoving party." Johnson v. Smith, 104 F.4th 153, 167 (10th Cir. 2024) (citation modified).

### A. The Trappers Do Not Have Justiciable Claims.

To bring a suit in federal court, plaintiffs must establish that their claims are justiciable, meaning that the plaintiffs have standing and that their claims are ripe for review. Kan. Jud. Rev. v. Stout, 519 F.3d 1107, 1114 (10th Cir. 2008). "We review questions of justiciability de novo." Id.

"To establish standing, a plaintiff must demonstrate that they (1) have suffered or likely will suffer an injury in fact, (2) the injury likely was caused or will be caused by the defendant, and (3) the injury likely would be redressed by the requested judicial relief." Shaw v. Smith, 166 F.4th 61, 74 (10th Cir. 2026) (citation modified). "To demonstrate an injury-in-fact, a plaintiff must show that they have suffered or will suffer an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. at 74–75 (citation modified).

5

The party seeking to establish federal jurisdiction has the burden to show standing is met. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  For an association to establish standing, it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Utah Ass'n of Cntys. v. Bush, 455 F.3d 1094, 1099 (10th Cir. 2006) (citation modified).

Before addressing the Trappers' appellate arguments on standing, we first recognize that there is some uncertainty as to what the Trappers' injuries — and therefore theories of standing — are.  The Trappers bring Establishment Clause, Equal Protection Clause, and civil rights claims.  Aplt. App. 12–18.  Although their complaint stated that the Act and its exception are both unlawful, their claims only challenge the exception.  Id. In their response to the motions to dismiss, the Trappers stated that they "have demonstrated economic, recreational, aesthetic, psychological, and stigmatic injuries as a direct result of the [] Act."  Aplee. Supp. App. 76.  The district court interpreted their complaint and response as alleging two general theories of injury: (1) that they cannot trap (causing economic, recreational, aesthetic, and psychological injuries) and (2) that the exception establishes an unlawful preference for Native Americans and religion (causing a stigmatic injury).  Aplt. App. 35–39.  We agree with this interpretation of their

complaint and briefing and similarly consider whether either theory confers standing.[2]
We find that neither theory does.

### 1. The Trappers Do Not Have Standing to Bring Claims Based on Their Economic, Recreational, Aesthetic, and Psychological Injuries.

The first type of injury is an obvious one: that the Trappers cannot trap. This has caused them economic, recreational, aesthetic, and psychological injuries, according to the Trappers. Aplee. Supp. App. 76–77. The district court rejected this theory because the injuries are not redressable. Aplt. App. 35–37. We agree. The Trappers allege only that the exception is unlawful, not the general ban. So even if we declared the exception unlawful, the prohibition on trapping would remain, and the Trappers would still be injured.[3]

On appeal, the Trappers argue that the exception cannot be severed from the rest of the Act; therefore, if the exception is unlawful, the entire Act is unlawful, and their claims are redressable. Aplt. Br. at 35–39. After the Trappers made this argument briefly below, Aplee. Supp. App. 81–82, the district court noted there was no evidence that the New

---

[2] Although we consider the Trappers' evolving theories of injury, we stress plaintiffs' obligation to meet pleading requirements. We have applied the Twombly and Iqbal plausibility test to assess standing in a complaint. See COPE v. Kan. State Bd. of Educ., 821 F.3d 1215, 1220–21 (10th Cir. 2016); Calderon v. City & Cnty. of Denver, 855 F. App'x 438, 445 (10th Cir. 2021). In addition to alleging sufficient factual matter to plausibly support standing, plaintiffs should at the very least identify their theories of injury in their complaint, not in subsequent briefing.

[3] Although the district court did not directly say so, we find that their claims also fail on traceability. "In this case, like many, redressability and traceability overlap as two sides of a causation coin." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1159 (10th Cir. 2005) (citation modified).

Mexico legislature would not have passed the Act without the exception, so even if the exception is unlawful, it would not strike the entire Act, Aplt. App. 36–37.

The Trappers correctly state that a severability clause raises a presumption that the legislature would have enacted the remainder of the statute without the invalidated section. Aplt. Br. at 35 (citing Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1240 (10th Cir. 1996)). However, they seem to argue that the opposite presumption also applies — that without a severability clause, we presume that the legislature would not have enacted the statute without the exception. Id. at 36. And in the present case, the circumstances suggest that the New Mexico legislature would have refused to pass the Act without the exception. Id. at 37–38. The exception, according to the Trappers, "is integral to the Act's core design[.]" Aplt. Reply Br. at 15.

Severability of a state statute is a question of state law. See Harvey E. Yates Co., 98 F.3d at 1240. "It is a fundamental principle that a part of a statute may be invalid and the remainder valid, where the invalid part can be separated from other portions, without impairing the force and effect of the remaining portions." Giant Indus. Ariz., Inc. v. Tax'n. & Revenue Dep't, 796 P.2d 1138, 1140 (N.M. Ct. App. 1990). Under New Mexico law, the lawful part of a statute can remain in effect if

> (1) the invalid part [is] separable from the other portions without impairing the force and effect of the remaining parts; (2) the legislative purpose expressed in the valid portion can be given force and effect without the invalid part; and (3) when considering the entire act, it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

Harvey E. Yates Co., 98 F.3d at 1240 (quoting Giant Indus. Ariz., Inc., 796 P.2d at 1140).

First, although a severability clause raises a presumption of severability, we see no reason to adopt a reverse presumption that the lack of severability clause raises a presumption that an act is not severable. The Trappers have not cited any authority suggesting that we should do so, and we are especially reluctant given that state law governs the severability analysis here. Moreover, case law does suggest that, generally speaking, courts should sever the unconstitutional portion of a statute if possible. See Kan. Jud. Rev., 519 F.3d at 1122; Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 328–29 (2006) ("We prefer . . . to sever [the statute's] problematic portions while leaving the remainder intact[.]").

Second, we are not convinced that the legislature would have refused to pass the Act without the exception. The Trappers point to no text (or even legislative history) in support. Defendants, for their part, offer support to show that the main purpose of the Act was to protect wildlife, people, and pets. Aplee. Br. at 22–24 (describing the history of the Act's passage). Given the Trappers' burden to establish standing, they have not shown that the exception cannot be severed.

Accordingly, we find that even if the exception is unlawful, it could be severed from the Act, leaving the prohibition on trapping in place. The Trappers' economic, recreational, aesthetic, and psychological injuries based on their inability to trap are not redressable.

9

### 2. The Trappers' Psychological and Stigmatic Injuries Are Not Ripe and Are Not Judicially Cognizable.

The second type of injury is more attenuated: that the exception communicates that the government favors Native Americans and religion, and the Trappers are excluded from the favored group. According to the Trappers, this has caused them psychological and stigmatic injury.[4] The district court held that although this type of injury is redressable because it is caused by the exception, it is not a judicially cognizable harm. Aplt. App. 37–39. And even if the harm was judicially cognizable, any claims based on this theory would not be ripe because the government has yet to promulgate any rules pursuant to the exception.

The claims based on this harm are not ripe for review. For an issue to be ripe, "it must present a live controversy, ripe for determination, advanced in a clean-cut and concrete form." Kan. Jud. Rev., 519 F.3d at 1116 (citation modified). The ripeness

---

[4] Again, there is some confusion regarding the Trappers' exact theories of injury. The district court considered the Trappers' alleged psychological injury in conjunction with their economic, recreational, and aesthetic injuries caused by being unable to trap. Aplt. App. 35–37. In their response to the motions to dismiss, the Trappers characterized their psychological injury as stemming from the government's endorsement of another's religion, which sends a message to those not in the favored group that they are outsiders. Aplee. Supp. App. 77. In their opening brief, they explain that the psychological injury includes both the harm from being unable to trap and the harm from the stigma of not being in the government's favored group. Aplt. Br. at 7 n.2.

In any event, during oral argument, counsel for the Trappers stated that the psychological and stigmatic injuries are essentially one theory, but that courts have used different terminology depending on whether plaintiffs allege religious discrimination or an equal protection violation. Oral Arg. at 13:25–16:00. For present purposes we adopt the Trappers' approach and consider the psychological and stigmatic injuries together. Even if there is any difference in the case law, both theories fail for the same reason: they are not ripe.

inquiry focuses on whether the plaintiff's harm "has matured sufficiently to warrant judicial intervention." Id. (citation modified). It "addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." Id. (citation modified).

Ripeness involves both constitutional and prudential considerations. United States v. Cabral, 926 F.3d 687, 693 (10th Cir. 2019). Under Article III, we may not issue advisory opinions. Id. Even if the case is ripe under the Constitution, we may decline to review it for prudential reasons after considering "(1) the fitness of the issue for judicial review, and (2) the hardship to the parties from withholding review." Id. (citation modified). To determine whether an issue is fit for judicial review, we "focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." Id. (citation modified). "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (citation modified). And for the hardship inquiry, we consider whether the plaintiff "faces a direct and immediate dilemma" from the challenged conduct. Id. (citation modified).

The Act's exception applies only "pursuant to rules issued by the department of game and fish in collaboration with the secretary of Indian affairs[.]" N.M. Stat. Ann. § 17-11-4(H). No such rules have been promulgated, and we do not know if such rules will ever be promulgated. Meaning today, the prohibition against trapping stands, regardless of Native American status. Unless and until there are regulations putting the exception into effect, the Trappers are asking us to issue an impermissible advisory decision on the issue.

11

The Trappers' psychological and stigmatic injuries were properly dismissed on ripeness alone. But we briefly address the Trappers' contention that these injuries are ripe even without any regulations. Aplt. Reply Br. at 18–20; Oral Arg. at 04:45–05:22. They argue that the very existence of the statutory exception, for which the Trappers could never qualify, injures the Trappers now because it communicates that the government prefers Native Americans over other groups.

Even if ripe, this is not the sort of concrete and particularized injury that we can review under Article III. Shaw, 166 F.4th at 74–75. The Trappers rely upon cases where courts have addressed psychological and stigmatic injuries. See, e.g., Catholic League for Religious & C.R. v. City & Cnty. of San Francisco., 624 F.3d 1043 (9th Cir. 2010); Allen v. Wright, 468 U.S. 737 (1984); but see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464 (1982) (relied on as distinguishable). And although we agree that these injuries may be serious, see Allen, 468 U.S. at 755, the injury the Trappers allege does not rise to a judicially cognizable level.

To establish standing, the injury must be "concrete," meaning "it must be real rather than abstract[.]" Shaw, 166 F.4th at 75 (citation modified). It must also be "particularized," meaning "it must affect the plaintiff in a personal and individual way[.]" Id. (citation modified). And plaintiffs cannot bring "generalized grievances more appropriately addressed in the representative branches[.]" Hill v. Warsewa, 947 F.3d 1305, 1309 (10th Cir. 2020). The Trappers' theory fails for all such reasons. Their theory that the exception communicates that they are not in the preferred group is abstract. And even if this was a concrete injury, it is not particularized because anyone in the country,

12

without ties to New Mexico or an interest in trapping, could similarly claim that the exception communicates a preference for Native Americans. That is a generalized grievance that does not confer standing, and the cases the Trappers rely upon do not convince us otherwise.[5]

### B. The District Court Did Not Err in Declining to Exercise Supplemental Jurisdiction.

District courts may exercise supplemental jurisdiction on a discretionary basis. Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010); see also 28 U.S.C. § 1367. "[I]f federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Brooks, 614 F.3d at 1229 (citation modified); accord Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997).

After dismissing the federal and state constitutional claims, the district court declined to exercise supplemental jurisdiction over the Trappers' remaining New Mexico Civil Rights Act claim.[6] Aplt. App. 39–41. It found that the claim was best left for the state court to address. Id. On appeal, the Trappers do not challenge the district court's

---

[5] Because we find that the Trappers cannot establish standing for their individual members, we need not consider whether they can establish associational standing.

[6] The court concluded that it need not consider whether to exercise supplemental jurisdiction over the Trappers' state constitutional claims because it already dismissed those claims in conjunction with the federal claims for lack of standing. Aplt. App. 40 n.3. On appeal, the Trappers argue that they have standing to bring the state constitutional claims for the reasons already discussed, but they do not separately challenge the district court's conclusion on these claims. See Aplt. Br. at 39 n.12.

discretion; they argue, again, that the standing analysis was erroneous.  Aplt. Br. at 39–40.  Finding no argument to the contrary, we reject that the court erred in declining to exercise supplemental jurisdiction.

For the foregoing reasons, we **AFFIRM** the district court's dismissal without prejudice.